Case number is 25-2284. Alright, we'll hear first from Mr. Vandalos. You have five minutes. Good morning, Your Honors, and may it please the Court. My name is John Vandalos, and I represent the plaintiff appellate Corinne Vandalos. This case asks whether an employee may dismiss a Title VII religious accommodation claim at the pleading stage simply by relying on broad vaccination mandate without conducting an individualized assessment or meaningfully considering reasonable accommodations. How could Stony Brook have accommodated the plaintiff while still satisfying the then-effective New York statute or regulations? Through areas that she has done in the past. Mrs. Vandalos has worked. Well, they did reassign her during the pandemic. Right, but she would still have contact with other personnel, even though she didn't have contact with patients, right? In that particular instance, yes, but there is areas of the hospital. The hospital sees 8,100 employees. So is the complaint alleged that there is an accommodation that would satisfy the statute? Absolutely, and one that she did do during her employment. Where is that in the complaint for me? The allegation of an accommodation that would satisfy the New York mandate. That was something that we were hoping to get to past the pleading stage and into the discovery stage? There has to be something. She has to ask for an accommodation that can be accommodated, right? Yes, she offered accommodations. She offered telemedicine. It involved contact with other personnel, right? Telemedicine does not, and that's in the complaint. Okay. She offered telemedicine. She offered to be in a call center. She offered to be in triage, which she did in her regular job, which did not involve other employees. It didn't involve patients. It was somewhere where she sat in a room solo, and part of her responsibilities were follow-up calls to patients, scheduling appointments, client progress, answering questions on their health and how to move forward. So it's not something that we're asking for that's new. That's something that she had already done for years in the Breast Center. Okay. Ms. Banalos was a devoted employee for Stony Brook Hospital for 37 years, both inpatient and outpatient, and again, Ms. Banalos was not asking just to remain at the Breast Care Center. She was willing to take any option within the hospital, and since the hospital sees 31,000 inpatients, 940,000 outpatients, I would think that it would, after 37 years, try to accommodate somebody who was a dedicated employee. The complaint alleges that Ms. Banalos held a sincere religious objection to the COVID-19 vaccine, and Stony Brook recognized this belief and that she was denied categorically without an individualized analysis. She also proposed multiple accommodations. Again, addressing your question, reassignment, telemedicine, administrative work, masking, testing, or other mitigation measures widely used during the pandemic. Second, the district court misapplied Groff. Under Groff, an employee must show that the request accommodation would oppose, quote, a substantial increase in costs related to the conduct of the business, which Stony Brook made no such showing. There was no factual record, no individualized assessment, no evidence that accommodating Ms. Banalos would create a substantial operational burden. Instead, the hospital relied on a blanket policy, but Groff specifically requires a case-by-case inquiry. The defendant's own brief illustrates why dismissal at the pleading stage was premature. First, the hospital repeatedly argues that no accommodation was possible because New York requirement of the vaccination, yet the same regulatory framework acknowledged documented medical exemptions. This is significant because it demonstrates accommodations were not categorically impossible. Second, the hospital also claims undue hardship, but points to no generalized concerns affecting unvaccinated workers broadly. It does not explain why Mrs. Banalos specifically could not perform reassigned or non-patient-facing duties. Third, Title VII of the federal law is a federal law and should not be overridden by state regulation, even assuming New York imposed a vaccine mandate that did not eliminate the employee's independent federal obligation to consider reasonable religious accommodations wherever possible. Fourth, the defendant argues that it merely followed state law, requiring health care workers to be, quote, fully vaccinated, yet the booster requirement, which came months later, required, which removed the requirement for the booster, thereby removing the necessity of, quote, being fully vaccinated, because once you remove the booster under the CDC guidelines, you're no longer considered fully vaccinated. So the defendant never, at that point, never reevaluated the plaintiff's suspension or considered whether changing circumstances, like a change in law, would warrant reconsideration or the available, a different available accommodation. Additionally, the defendant cites concerns about staffing shortages alleged by unvaccinated employees, while at the same time the state's relaxed booster mandate is precisely what caused staffing shortages. All right, counsel, thank you for your time. We'll hear from Stony Brook. May it please the Court, Raymond Moss for Stony Brook University Medical Center. Judge Codd, I want to start with the question you asked my friend on the other side about allegations in the complaint about a reasonable accommodation that was available. The only allegations that a plaintiff made were that she requested a transfer, outside of the request for a blanket exemption from the COVID-19 vaccination policy, she requested a transfer to a hospital call center where she had previously worked at the beginning of the pandemic. Why did she have to make any allegations? Let me take a step back. You would agree that undue hardship is an affirmative defense, right? That's correct. And so Stony Brook bears the burden of both pleading and proving that defense. Fair? That's correct. All right. So given that, why does it matter what Ms. Vandalos had put into her complaint? It's not her burden to plead anything about an undue hardship or a reasonable accommodation. And in fact, I mean, correct me if I'm wrong, but I thought Roth made clear that an employer must consider not only the accommodation suggested by an employee, but the whole panoply of accommodations to determine whether there would be an undue hardship. So if you take all that together, why doesn't that mean that this was just premature to dismiss this on an affirmative defense at this stage? So two points to make in response, Your Honor. First and foremost, if the defense of an undue burden is apparent from the face of the complaint, as the district court found here, it is an argument that could be made even at the pleading stage. And Groff didn't overrule that principle. Groff did say that accommodations outside of a specific request need to be considered. But we do have evidence, one, that there was a meaningful detailed consideration by the hospital here. That's at DA 55 of the record, where it specifically —  I'm sorry, Your Honor. Say again? Is that in the complaint? It is not a document that's specifically in the complaint. It is one, though, that the district court was permitted to consider. Among all documents that were before it at the motion-to-dismiss stage. So that document shows that all of the accommodations she did request and suggests that even other requests were considered. But more fundamentally, Judge Supermanian, even if she had requested a telemedicine assignment, for example, which there's no specific allegation in the complaint that she did, the word does show up at DA 16 in the record, but there's no allegation she made that request. Well, in her — just to — I don't want to derail you, but just on that point. In her complaint, she says that she made a proposal that she be moved to a different area in which she wouldn't expose personnel, patients, or residents. And that she gave an example of a call center. And so it's not clear from the complaint that she was saying, you know, the only accommodation that I thought was reasonable would have been the call center. Rather, it seems that she was saying, can you help me out? Can you move me somewhere else? And she gave an example of a call center because she had done that during the height of the pandemic. So doesn't that further mean that maybe this wasn't — you know, the issue wasn't right at the complaint stage? Well, there needs to be a plausible allegation. So, Your Honor, I think acknowledge — There does not have to be a plausible allegation. I thought you made that clear because it's an affirmative defense. You have to make a plausible allegation of that when you answer the complaint. Yes, Your Honor. Apologies. So just — just, I think, finishing the point about telemedicines, I think this sort of encapsulates and does respond directly to your question. That is a role that would have taken her outside of the definition of personnel under the DOH rule. But because plaintiff attached to her complaint the job description and the performance standards that she admits were in place when the DOH rule was in effect, those documents undercut any such potential for a telemedicine-type reassignment. She was required to provide direct care to patients, administer medication to them. What if the record showed that Stony Brook routinely allowed training nurses in her position to do telemedicine and telehealth? I think that would be different. There's a case from — You don't have a factual record, right, to say one way or the other what the employer's practice was. And, I mean, you would agree that if it was just consistent employer practice, that telehealth was something that was an available option for people during that time period. Given the need for remote health during the height of the COVID pandemic, that would be relevant at the very least to the undue hardship issue. It would be relevant, but there is nothing in the record to suggest that's possible. In fact, the documents — Well, there is a record. Well, there is a — there's the complaint. There are documents attached to the complaint. All of those things combined undercut an inference that that type of accommodation would be available. This case is very different than some of the other cases that have worked their way through this circuit. One is a case called Grimes that was resolved by Justice Costell about two years ago, where the plaintiff specifically alleged that she had been allowed to work remotely for the previous 15 months, except for having to come into work once a month for a monthly meeting. But I thought your argument — and correct me if I'm wrong. I thought your argument was reliance on — there have been several cases, one of which I sat on a panel, where if a hospital has to adhere to a mandate that any and all personnel must be vaccinated, that it is an undue hardship to excuse someone from that requirement. And specifically with the call center, there were still personnel in the call center. They were just 10 feet apart, correct? That's right, Judge Connell. So I thought that was your argument, that relying on cases out of the circuit, that because it's a mandate and because the hospital has to adhere to the mandate, that that would be an undue hardship. That is our argument. As it applies to the request for a blanket exemption from the COVID-19 vaccination policy and to Plaintiff's request for a transfer to a call center, where, as Your Honor stated, she would be interacting with other personnel and not have been taken outside of the scope of the rule, it would have put the hospital in violation of a valid State law that this Court upheld in We the Patriots and exposed it to financial penalties. I would agree that as to something like telehealth, that that rule would not apply, because telehealth would not involve interaction with personnel. Right. So I think that is, as it applies to telehealth, that argument, we're not making that same argument. It's just that a telehealth reassignment is not something that is alleged in the complaint, and the record that we do have before us undercuts the possibility for that type of assignment. And can I ask you about the regulation, just something I had a question about? I don't know if you have it in front of you. But, yeah, if you have the definition of personnel, it has, and maybe you have it in front of you now. Hopefully. It has two parts to it. So the first part says that personnel covers every, basically everyone, every employee. Okay. Right. And then it says who engage in activities such that if they were infected with COVID-19, they could potentially expose other covered personnel, patients or residents. Okay. So right now you've got a problem in the regulation because in the definition of personnel, you've got a reference to personnel. And so normally what you do is you can't just keep looping back into the initial definition. You need to finish it up. And so usually what you'd say is it's the other two words that really kind of define the ambit of the regulation. So on that reading of the regulation, personnel would mean you can't be someone who's either going to have contact with patients or residents or have contact with other personnel who are going to have interactions with patients and residents. Is that a fair reading of the regulation? I think that's an overbroad reading. The concern underlying this provision. Overly narrow. Overly narrow. Excuse me. Overly narrow reading. And I know we're all textualists now, but the concern underlying this provision was that there was a tenfold increase in coronavirus infections during the time that the DOH regulation went into effect. And the Department of Health was concerned that individuals being unvaccinated in a sensitive environment like a hospital would lead to a outbreak in cases in the hospital, both exposing vulnerable patients to the disease, but also risking a staffing shortage that was already ongoing or exacerbating a staffing shortage. So I think given that context, reading the term personnel to mean another employee is sort of the proper way to read this language. So how do you do that just as a textual matter when you have covered personnel in the regulation, but the definition of personnel doesn't involve just the first part that says it's everybody, but says who engage in activities and it identifies patients or residents. So how do you read personnel to just be anybody, any employee? I read personnel to mean it's possible for you to contract COVID-19 and spread it to another employee of the hospital. You fall within the definition of personnel. So if that were true, wouldn't personnel have just been defined as any person, any employee of the company? Then that would have affected your reading, right? But they specifically had the second part of the regulation. Well, I mean, there are references to exposing to patients, exposing residents. So it's conceivable that a person in their role isn't necessarily working specifically with other personnel in the hospital. They're working directly with patients and they're overseeing residents. So it would encompass that specifically. So I think that's why that language is in there. So, you know, for that reason, I think that if an individual contracts under the language that an individual contracts COVID and can spread it to any other employee of the hospital, they are covered under the first rule. Just one factual question, just to round it out. So on the call center, like imagine if you had a call center that was a bunch of separate offices with everybody had closing doors and they were like 100 feet apart from each other. It's a massive call center. Then under those circumstances, there would at least be a factual question as to whether the regulation would be complied with, right? A call center with, I'm sorry, Your Honor, how large is the call center? Sure. Everyone's got like closing doors and each of the little offices is like 100 feet away from each other, right? Under those factual circumstances, you could imagine an issue as to whether the regulation might be complied with, even on your reading. I think that that is possible, that there would be a factual issue in that circumstance. It's very different than what we have here where the complaint alleges that the call center was 400 square feet in size. It was a confined space. And she was working within a few feet of at least four other individuals on any given shift. You know, under the facts alleged in this case, it just doesn't support an inference of a reasonable accommodation. But I take Your Honor's point about there are potential accommodations hypothetically that could create fact issues that would need to go to discovery. Given that it was a call center, why couldn't people just take those calls from home? Your Honor, that is something that could have been alleged in the complaint. It was not. We just don't have something to – I don't have a reason – a way to answer that question informationally on record. For the reasons we discussed in the papers, we ask this Court to affirm the district court's dismissal. Thank you. Thank you both. We'll take that matter under advisement.